UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                        )
MICHAEL X. LUCKEY,                      )
Personal Representative of the          )
ESTATE OF KELLY A. LUCKEY,              )
                                        )
            Plaintiff,                  )
                                        )
       v.                               )        Civil Action No. 09-1338 (PLF)
                                        )
BALBOA INSURANCE COMPANY, *et al.*,     )
                                        )
            Defendants.                 )
_____)


OPINION

       This matter, which was removed to this Court from the Superior Court of the

District of Columbia pursuant to 28 U.S.C. § 1441(a), is a declaratory judgment action involving

the scope of coverage of two insurance policies issued by defendant Balboa Insurance Company

("Balboa").   Now pending before the Court are the parties' cross-motions for summary judgment

and the defendants' motion to dismiss the plaintiff's complaint against Balboa.

       The complaint filed by plaintiff Michael X. Luckey originally named three

defendants in addition to Balboa: Sukai Prom-Jackson, the holder of the Balboa insurance

policies; John L. Prom, as the personal representative of the estate of Anthony J. Prom; and ACE

Private Risk Services ("ACE").[1]  Ms. Prom-Jackson, Balboa, and ACE moved to dismiss the

_____

[1]       Defendants state that "[t]he Complaint names 'ACE Private Risk Services' as defendant.
However, ACE Private Risk Services is neither a corporation nor a legal entity; it is a marketing
name.  The actual entity in question is ACE American Insurance Company."  See Defendants'
Notice of Removal at 2 n.1.  For purposes of the Court's analysis, these two entities are treated as
one and the same.

complaint against them on July 27, 2009.  While that motion was pending, the parties filed cross-motions for summary judgment.  After careful consideration of the parties' papers and the entire record in this case, the Court granted defendants' motion to dismiss with respect to Ms. Prom-Jackson and ACE by minute order dated January 15, 2010.  By the same minute order, the Court *sua sponte* dismissed the plaintiff's complaint against John Prom.  See Best v. Kelly, 39 F.3d 328, 331 (D.C. Cir. 1995) ("Complaints may . . . be dismissed[] *sua sponte* . . . whenever 'the plaintiff cannot possibly win relief.'").  Because plaintiff's complaint contains no allegations whatsoever against Ms. Prom-Jackson, John Prom, Anthony Prom, or ACE, plaintiff's complaint does not "state a claim for relief that is plausible on its face" against any of these defendants. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007); see also Best v. Kelly, 39 F.3d at 331.  Accordingly, the Court dismissed the complaint against them under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted.

The defendants' motion to dismiss thus has been resolved with regard to all defendants except Balboa.  For the reasons explained in this Opinion, the Court now will deny the defendants' motion to dismiss with respect to Balboa, deny plaintiff's motion for summary judgment, and grant defendants' motion for summary judgment with respect to Balboa.[2]

---

[2]     The documents before the Court in connection with these motions include: Defendants' Motion to Dismiss ("Defs' MTD"); Plaintiff's Opposition to Defendants' Motion to Dismiss ("Pl's Opp. to Defs' MTD"); Defendants' Reply Brief in Support of its Motion to Dismiss ("Def. Reply MTD"); Plaintiff's Motion for Summary Judgment ("Pl's MSJ"); Pl's MSJ, Ex. A (Affidavit of John L. Prom) ("Prom Aff."); Pl's MSJ, Ex. B (Affidavit of Ida Fofana) ("Fofana Aff."); Pl's MSJ, Ex. E (Deposition of Sukai Prom-Jackson) ("Prom-Jackson Dep."); Defendants' Brief Opposing Plaintiff's Motion for Summary Judgment ("Defs' Opp. to Pl's MSJ"); Plaintiff's Reply to Defendants' Brief Opposing Plaintiff's Motion for Summary Judgment ("Pls' Reply to Defs' Opp. to Pl's MSJ"); Pls' Reply to Defs' Opp. to Pl's MSJ, Ex. B (Affidavit of Victor A. Cuco) ("Cuco Aff."); Defendants' Motion for Summary Judgment ("Defs' MSJ"); Plaintiff's Objection and Response to Defendants' Motion for Summary Judgment ("Pl's Opp. to Defs' MSJ"); and Defendants' Reply Brief in Support of Their Motion

I.  BACKGROUND

On March 16, 2008, a tragic automobile accident resulted in the deaths of Kelly

A. Luckey and Anthony Prom, a 28 year-old aspiring chef.  See Pl's SMF ¶ 13.  The accident

occurred while Anthony Prom was driving a car owned and insured by Ms. Luckey.  Id. ¶ 15.[3]

The car involved in the accident was not insured under any insurance policy issued by Balboa to

Sukai Prom-Jackson.  Id. ¶ 16.

Beginning in July 2007 and until the accident in March 2008, Anthony Prom lived

in a house owned by his aunt, Sukai Prom-Jackson, at 1208 Tewkesbury Place, N.W.,

Washington, D.C. 20012 ("the Washington, D.C. house").  See Pl's SMF ¶¶ 11, 12; Prom Aff.

¶ 2, Fofana Aff. ¶ 1.  Ms. Prom-Jackson testified in her deposition that she did not require Mr.

Prom to pay rent for living in her house because he was working to establish himself as a sous

chef and he was struggling to pay other bills.  See Prom-Jackson Dep. at 36-37, 43, 55.  Despite

the fact that Ms. Prom-Jackson did not charge Mr. Prom rent, she testified in her deposition that

---

for Summary Judgment ("Defs' Reply to Pl's Opp. to Defs' MSJ").  Plaintiff's Motion for
Summary Judgment includes a Statement of Undisputed [Material] Facts ("Pl's SMF"), as well
as Plaintiff's Separate Statement of Undisputed [Material] Facts ("Pl's Sep. SMF").

The automobile policy issued to Ms. Prom-Jackson by Balboa Insurance Company
(Policy Number: 2667-01-05-40A) is Exhibit A to defendants' motion for summary judgment
(hereinafter "Automobile Policy").  The umbrella policy issued to Ms. Prom-Jackson by Balboa
Insurance Company (Policy Number: 267-01-05-40U) is Exhibit B to defendants' motion for
summary judgment (hereinafter "Umbrella Policy").

The homeowners' insurance policy issued by Travelers Insurance Company to Ms. Prom-
Jackson for the property at 1208 Tewkesbury Place, N.W., Washington, D.C. 20012, is attached
as Exhibit A to plaintiff's reply to defendants' brief opposing plaintiff's motion for summary
judgment ("Travelers Home Policy").

[3]      The insurance policy that Ms. Luckey purchased for the car involved in the accident is not
at issue in this case.

she did not share a close relationship with him, did not regularly speak to him, only saw him at family events, and did not know personal things about his life. See id. at 29, 30.

Ms. Prom-Jackson also owned a house at 17510 Ashton Forest Terrace, Sandy Spring, Maryland 20860. See Pl's SMF ¶¶ 1, 8, 9. Ms. Prom-Jackson lived in the Washington, D.C. house with her son and her husband, who is now deceased, until 2004, when she began living exclusively in the house she owned in Maryland. See Prom-Jackson Dep. at 19, 31-34. Ms. Prom-Jackson testified in her deposition that she rarely visited the Washington, D.C. house after 2004, but that she maintained a homeowner's insurance policy on the house from Travelers Insurance. See Travelers Home Policy. This insurance policy is not at issue in this case. Anthony Prom and Ms. Prom-Jackson never lived in the Washington, D.C. house during the same period of time. See Pl's SMF ¶¶ 11, 12; Prom-Jackson Dep. at 19, 31-34.

In October 2002, Ms. Prom-Jackson sponsored Ida Fofana, her distant cousin from Gambia, to receive a G5 domestic visa. See Pl's Sep. SMF ¶ 5. A G5 domestic visa is issued to the "non-immigrant . . . household employees of representatives and staff members of international organizations." Cuco Aff. ¶ 4. Under federal immigration law, a G5 domestic employee must "be employed exclusively by the sponsoring employer" and can perform only "household duties" for that employer. Id. ¶ 5.

In 2002, Ms. Fofana began living at Ms. Prom-Jackson's Washington, D.C. house and working as a G5 domestic employee. Pl's Sep. SMF ¶ 5. It is undisputed that Ms. Fofana performed domestic work from October 2002 to June 2004 at the Washington, D.C. house, while Ms. Prom-Jackson and her son lived there; this work "includ[ed] but [was] not limited to housekeeping, house maintenance, shopping, childcare, cooking, cleaning, laundry and errands."

4

Id.  Although the parties dispute whether Ms. Fofana continued to perform domestic work at the

Washington, D.C. house after June 2004 when Ms. Prom-Jackson and her son moved to the

Maryland house, this fact is not material to the Court's analysis.   Regardless of this dispute, it is

clear from the record that Ms. Fofana and Anthony Prom both lived in the Washington, D.C.

house owned by Ms. Prom-Jackson from July 2007 until the accident in March 2008.  See Pl's

SMF ¶¶ 11, 12; Prom Aff. ¶ 2; Fofana Aff. ¶ 1.

## II.  RELEVANT INSURANCE POLICIES

### A.  Balboa Automobile Policy

Balboa is an insurance company that issued a series of insurance policies to Ms.

Prom-Jackson.  See Pl's SMF ¶¶ 1, 5.  Balboa issued an automobile insurance policy to Ms.

Prom-Jackson, at 17510 Ashton Forest Terrace, Sandy Spring, Maryland 20860, for a policy

period from May 21, 2007, to May 21, 2008 (the "automobile policy").  See id. ¶ 1.  The

automobile policy insured one car, a 2002 Honda Accord, and insured two drivers, Ms. Prom-

Jackson and her son, M'Buram.  Id. ¶ 2, 3.

The terms of the automobile policy extended coverage beyond the named insured

individuals to Ms. Prom-Jackson's family members if they were "residents of her household."

See Pl's SMF ¶ 4.  The relevant language provided:

**1.     We Insure You**

*You* are an *insured person* under any coverage in *your* Auto Policy.  This includes
*your* spouse if he or she lives with you.

**2.     We Insure Your Family Members.**

Your *family members* are also *insured persons* under every coverage in this policy.  This includes all of the following people, but only if they are residents of *your household*:

- *your* children;
- *your other relatives;* and
- other people under 21 years of age, such as wards, who are in the care of *you* or a family member.

Id.; see also Automobile Policy at 2 (emphasis in original).

### B.  Balboa Umbrella Policy

Balboa also issued an umbrella insurance policy to Ms. Prom-Jackson for the same period, from May 21, 2007, to May 21, 2008 ("the umbrella policy").  See Pl's SMF ¶ 5. Like the automobile policy, the umbrella policy was issued to Ms. Prom-Jackson at 17510 Ashton Forest Terrace, Sandy Spring, Maryland 20860.  Id. ¶ 6.   The umbrella policy also extended coverage to Ms. Prom-Jackson's family members:

**WHO WE INSURE**

Under *your* Personal Umbrella Policy, *insured person* includes *you*, *your family members* and . . .

**Family member** means any of these people, but only if they are residents of *your* household:

- *your* children
- *your* other relatives
- other people under 21 years of age, such as wards, who are in the care of *you* or a family member

Id. ¶ 7 (emphasis in original); see also Umbrella Policy at 4, 8.  In its terms and conditions section, the umbrella policy defined "residence" as "a one, two, three or four-family house,

6

condominium, cooperative unit, apartment or any other type of residence you own or rent to live in."  See Umbrella Policy at 6.  There was no similar definition in the automobile insurance policy.

## III.  DISCUSSION

### A.  Defendants' Motion To Dismiss

As noted, the Court previously granted Sukai Prom-Jackson and ACE's motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted; it *sua sponte* dismissed the case against defendant John Prom for the same reason.  Defendants also originally moved to dismiss the case against Balboa on the theory that District of Columbia law does not allow a direct action against an insurer by a party who is not in privity with the insurance carrier.  See Defs' MTD at 3.  In response, plaintiff argued that Maryland law applied to this action and permits declaratory judgment actions by a non-insured party against an insurer.  See Pl's Opp. to Defs' MTD at 8-9.  Defendants conceded this argument in their reply brief and, as a result, they are "no longer contending that the Luckey Estate cannot bring this declaratory judgment action [against Balboa.]"  See Def. Reply MTD at 2.  The Court therefore denies defendants' motion to dismiss with respect to Balboa because plaintiff has properly stated a claim against it.

### B.  Cross-Motions for Summary Judgment

#### 1.  Standard of Review

Both the plaintiff and the defendants have moved for summary judgment. Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials

on file, and any affidavits [or declarations] show that there is no genuine issue as to any material

fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); see

also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986); Holcomb v. Powell, 433

F.3d 889, 895 (D.C. Cir. 2006).  "A fact is 'material' if a dispute over it might affect the outcome

of a suit under the governing law; factual disputes that are 'irrelevant or unnecessary' do not

affect the summary judgment determination."  Holcomb v. Powell, 433 F.3d at 895 (quoting

Anderson v. Liberty Lobby, Inc., 477 U.S. at 248).  An issue is "genuine" if the evidence is such

that a reasonable jury could return a verdict for the nonmoving party.  See Anderson v. Liberty

Lobby, Inc., 477 U.S. at 248; Holcomb v. Powell, 433 F.3d at 895.  "[T]he evidence of the non-

movant is to be believed, and all justifiable inferences are to be drawn in his favor."  Anderson v.

Liberty Lobby, Inc., 477 U.S. at 255; see also Mastro v. Potomac Electric Power Co., 447 F.3d

843, 849-50 (D.C. Cir. 2006); Aka v. Washington Hospital Center, 156 F.3d 1284, 1288 (D.C.

Cir. 1998) (en banc); Washington Post Co. v. Dep't of Health and Human Services, 865 F.2d

320, 325 (D.C. Cir. 1989).

   The nonmoving party's opposition, however, must consist of more than mere

unsupported allegations or denials and must be supported by affidavits, declarations or other

competent evidence, setting forth specific facts showing that there is a genuine issue for trial.

FED. R. CIV. P. 56(e); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  If the nonmovant's

evidence is "merely colorable" or "not significantly probative," summary judgment may be

granted.  Anderson v. Liberty Lobby, Inc., 477 U.S. at 249-50; see Scott v. Harris, 550 U.S. 372,

380 (2007) ("Where the record taken as a whole could not lead a rational trier of fact to find for

the non-moving party, there is 'no genuine issue for trial.'") (quoting Matsushita Electric

Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).  To defeat a motion for summary judgment, a plaintiff must have more than "a scintilla of evidence to support [the] claims."  Freedman v. MCI Telecommunications Corp., 255 F.3d 840, 845 (D.C. Cir. 2001).  On a motion for summary judgment, the Court must "eschew making credibility determinations or weighing the evidence."  Czekalski v. Peters, 475 F.3d 360, 363 (D.C. Cir. 2007).

### 2.  The Parties' Arguments

With respect to both the automobile policy and the umbrella policy, plaintiff first argues that the Balboa policies failed to explicitly define "resident of your household" and that coverage therefore is not limited to those family members who physically resided with Ms. Prom-Jackson at the Maryland property.  See Pl's MSJ at 17.  Under plaintiff's reading of the policies, Balboa did not use "any limiting or qualifying language to define resident relatives as those who live with Ms. Prom-Jackson even though Ms. Prom-Jackson owned two houses at which her relatives resided at the time the policy was in effect."  Id. (emphasis in original). Plaintiff asserts that the policies either expressly extended coverage to Anthony Prom or are ambiguous as to whether they extended coverage.  Plaintiff further argues that Ms. Prom-Jackson created a second "household" at her Washington, D.C. house to which the policies applied by allowing her G5 domestic employee Ida Fofana to work and live there.  Id. at 21-24.

Defendant Balboa offers three arguments in response and in support of its own cross-motion.  See Defs' MSJ at 7, 8, 14.  First, Balboa asserts that Anthony Prom was not a household resident of Ms. Prom-Jackson's at the time of the accident because under Maryland law a person is required "to live together with the named insured as a family" in order to qualify as a household resident.  Id. at 8-10.  Second, Balboa argues, Anthony Prom does not fall within

the narrow exception to this rule that considers persons to be residents of a household if they are not physically residing there so long as their absence is temporary and they continue to operate as a family with the named insured.  Id. at 10-14.  According to Balboa, Anthony Prom does not satisfy this exception because he never lived under the same roof as Ms. Prom-Jackson as part of her family.  Id.  Third, Balboa claims that courts in other jurisdictions have consistently held that a relative is not a resident of the named insured's household simply because he or she lives in a second home owned by the insured.  Id. at 14-17.  Without addressing or necessarily agreeing with each of Balboa's arguments, the Court finds that because the undisputed facts show that Anthony Prom was never a resident of Ms. Prom-Jackson's household, he was not a "family member" under the unambiguous terms of the two insurance policies and thus was not covered by the policies.  The Court therefore will grant summary judgment for defendant Balboa.

### 3. Applicable Maryland Law

As both parties have agreed, Maryland law governs the interpretation of the insurance policies at issue here.  See Pl's Opp. to Defs' MTD at 8-9;  Def. Reply MTD at 2. When determining the scope of coverage under an insurance policy, under Maryland law the "primary principle of construction is to apply the terms of the contract itself."  Bausch & Lomb Inc. v. Utica Mut. Ins. Co., 625 A.2d 1021, 1031 (Md. 2003); see also Medical Mut. Liability Ins. Society of Maryland v. Goldstein, 879 A.2d 1025, 1034 (Md. 2005).  "Maryland adheres to the principle of the objective interpretation of contracts."  Cochran v. Norkunas, 919 A.2d 700, 710 (Md. 2007).  Under this principle, where the language employed in a contract is unambiguous, a court must give effect to its plain meaning, and there is no need for further construction by the court.  Wells v. Chevy Chase Bank, F.S.B., 768 A.2d 620, 630 (Md. 2001).  Unless there is an

10

indication that the parties intended to use the terms at issue in a special or technical sense, courts

will interpret the words to have "their usual, ordinary, and accepted meaning." Cheney v. Bell

National Life, 556 A.2d 1135, 1138 (1989); see also Bausch & Lomb, Inc. v. Utica Mut. Ins. Co.,

625 A.2d at 1031. "A word's ordinary signification is determined by what meaning a reasonably

prudent layperson would attach to the term." Id. Maryland has not adopted the rule used in

many jurisdictions that an insurance policy is to be construed most strongly against the insurer.

Cheney v. Bell National Life, 556 A.2d at 1138. Rather, as with contracts in general, the parties'

intent is to be ascertained from the policy as a whole. Id.; see also Kendall v. Nationwide Ins.

Co., 702 A.2d 767, 771 (Md. 1997).

Maryland courts have consistently held that the term "resident of the household"

in an insurance policy is unambiguous language. See Peninsula Ins. Co. v. Knight, 255 A.2d 55,

63 (Md. 1969) ("The words [resident of the same household] themselves are clear, simple and in

general use. Put together they express a simple, homely, familiar concept."); Willis v. Allstate

Ins. Co., 591 A.2d at 896, 901 (Md. Ct. Spec. App. 1990) ("[T]he lack of ambiguity in the word

'resident' [in the phrase 'resident in your household'] has been determined by many

jurisdictions") (citing cases from California, Connecticut, Florida, Michigan, and Minnesota);

Rydstrom v. Queen Ins. Co. of Am., 112 A. 586, 587 (Md. 1921) ("[W]hen used as a qualifying

word … [resident of the household means] pertaining or belonging to the house or family"). See

also Cheney v. Bell Nat'l Life Ins. Co., 556 A.2d at 1135 ("[L]anguage which is merely general

in nature or imprecisely defined is not necessarily ambiguous"). In light of these decisions and

the objective, plain meaning approach of the Maryland courts to contract interpretation, and

because neither policy at issue contains any express indication that the parties intended to ascribe

a special or technical meaning to the phrase "resident of your household," the Court rejects

plaintiff's ambiguity argument and will give the term its ordinary and accepted meaning as used

and understood by a "reasonably prudent layperson."  See Bausch & Lomb Inc. v. Utica Mut. Ins.

Co., 625 A.2d at 1031.

   Several courts in Maryland have interpreted household residency requirements in

insurance policies similar to the ones in this case.  See, e.g., Mundey v. Erie Ins. Group, 914

A.2d 1167, 1178-80 (Md. 2006); Forbes v. Harleysville Mut. Ins. Co., 589 A.2d 944, 951-2 (Md.

1991); Peninsula Ins. Co. v. Knight, 255 A.2d at 56.  In doing so, they have adopted a "totality of

the circumstances" test for determining household residency under such policies.  Mundey v. Erie

Ins. Group, 914 A.2d at 1180.  Under that test, actual residence under a common roof is only one

factor to be considered but not "the controlling element."  Forbes v. Harleysville Mut. Ins. Co.,

589 A.2d. at 952.  In evaluating the "totality of the circumstances" or the "aggregate details of the

living arrangements of the parties," id., Maryland courts have examined a number of related

factors including, but not limited to, "the abandonment of a prior residence, close familial ties,

the dwelling of the family under one roof with shared enjoyment of the living facilities, and the

alleged resident being supported by the head of the household."  See Willis v. Allstate Ins. Co.,

591 A.2d at 900.

   In Forbes v. Harleysville Mut. Ins. Co., 589 A.2d 944 (Md. 1991), for example, a

wife who had recently separated from her husband was killed in an automobile accident.  Id. at

945.  Her husband sought a declaratory judgment that she remained a household resident under

his automobile insurance policy, even though she had recently moved out of the family home.  Id.

Under the "totality of the circumstances" test, the Court of Appeals of Maryland agreed that Mrs.

Forbes remained a resident of the household.  Id. at 951.  The court considered the following

factors:  while the parties were separated, they remained married at the time of the accident; no

divorce discussions or proceedings had begun; the duration of the separation was relatively brief;

the address on the wife's driver's license and voter registration remained at the family home; and

her new living arrangements were temporary.  Id.[4]

   In Peninsula Ins. Co. v. Knight, 255 A.2d 55 (Md. 1969), the Court of Appeals of

Maryland considered similar factors in determining that an adult son was a resident of his

parent's household.  The court emphasized that the son was a resident because he had

permanently left his former home and now lived under one roof with his parents, contributed to

the family budget, did not buy or cook his own food, and stored all of his possessions in the attic

of his parents' house.  Id. at 63.  Similarly, in Willis v. Allstate Ins. Co., 591 A.2d 896 (Md. Ct.

Spec. App. 1991), the court found the following facts relevant to the determination that an adult

daughter was a resident of her parents' household:  she had abandoned her prior residence with

no intention of returning, contributed to the family budget, lived in a close family environment

with her parents, and shared meals with them.  Id. at 900.


        4.  The Balboa Insurance Policies

   Both the Balboa automobile policy and the Balboa umbrella policy issued to Ms.

Prom-Jackson extended coverage to "residents of [Ms. Prom-Jackson's] household" but failed to

expressly define this term.  See Automobile Policy at 2; Umbrella Policy at 2, 6.  The only

---

[4]  The court reasoned that "[i]t would be an unreasonable construction of the 'household
residence' language in automobile insurance policies . . . to hold that during every such period of
separation, no matter how brief, the spouse who leaves the marital home automatically becomes
uninsured with regard to the family car."  Forbes v. Harleysville Mut. Ins. Co., 589 A.2d at 951.

notable difference between the two policies is that the umbrella policy defines the term "residence" as "a one, two, three or four-family house, condominium, cooperative unit, apartment or any other type of residence you own or rent to live in," <u>see</u> Umbrella Policy at 6, whereas the automobile policy includes no such definition.  <u>See</u> Automobile Policy at 14.  Giving the language its usual, ordinary, and accepted meaning, <u>Cheney v. Bell National Life</u>, 556 A.2d at 1138, it seems logical to the Court that a relative living in a home owned by the insured would *not* be considered by a "reasonably prudent layperson" to be a "resident of [the insured's] household," <u>Bausch & Lomb, Inc. v. Utica Mut. Ins. Co.</u>, 625 A.2d at 1031, in a situation where the policyholder lived in one house (in this case in Maryland) and the asserted family member in another (in the District of Columbia) during the entire period covered by the policy.  As noted, the undisputed evidence shows not only that Anthony Prom never lived at Ms. Prom-Jackson's Maryland address but that he never lived in *any* house owned by Ms. Prom-Jackson at the same time she did.  Accordingly, Anthony Prom was not a resident of Ms. Prom-Jackson's household under the plain meaning of either insurance policy.

Other than the fact that Sukai Prom-Jackson was Anthony Prom's aunt, there are no facts in the record that show that Anthony Prom and Ms. Prom-Jackson ever operated as a household.  The only facts plaintiff has shown are that Anthony Prom lived in a Washington, D.C. home owned by Ms. Prom-Jackson from July 2007 to March 2008, <u>see</u> Pl's SMF ¶¶ 11, 12, and that Ms. Prom-Jackson allowed him to live in that home without paying rent.  She lived separate and apart from him in an entirely different house in Maryland during the entire period, she did not have a close relationship with him, and they had almost no personal interaction where she "called him [or] spoke to him [or] knew personal things about him."  Prom-Jackson Dep. at

14

29-30; see Pl's SMF ¶¶ 11,12.  The mere fact that Anthony Prom lived rent-free in a home owned by Ms. Prom-Jackson in which she did not live is not enough to establish household residency under Maryland law.[5]  The Court concludes that in these circumstances Anthony Prom was not a resident of Ms. Prom-Jackson's household under either policy.

Plaintiff makes the separate, subsidiary argument that Ms. Prom-Jackson somehow extended her household to include the Washington, D.C. property by hiring Ms. Fofana as a G5 domestic employee who worked and lived in the Washington, D.C. property while Anthony Prom lived there, even though Ms. Prom-Jackson lived in Maryland.  Plaintiff claims that the G5 employee contracts between Ms. Prom-Jackson and Ms. Fofana show that Ms. Prom-Jackson considered her "household" to encompass both the Washington, D.C. and the Maryland properties.  See Pl's MSJ at 5.  In effect, the plaintiff asserts that Ms. Prom-Jackson's representations in these contracts to the federal government now estop her from claiming the opposite with respect to the insurance policies.  Id.  Plaintiff fails to cite any case law to support his argument that Ms. Fofana's status has any relevance to the question whether Anthony Prom was a resident of Ms. Prom-Jackson's household under the terms of the insurance policies.  This argument is an irrelevant distraction and completely misses the point of insurance policy contract interpretation at issue in this case.  No decision that the Court has found — in Maryland or in any other state — has ever examined the relationship between a third party and the named insured in

---

[5]     As defendants point out, "the undisputed facts show that [he] was an independent, emancipated adult, who came and went as he pleased, was employed as a chef . . . and was not subject to any control by Ms. Prom-Jackson as the head of his household."  Defs' Reply to Pl's Opp. to Defs' MSJ at 3-4.

order to determine whether an entirely different person was a resident of the insured's household.

Plaintiff's reliance on Ms. Fofana's status therefore is misplaced, and this argument fails.[6]

        For these reasons, the Court will deny defendants' motion to dismiss with respect to Balboa Insurance Company, grant defendants' motion for summary judgment with respect to Balboa, and deny plaintiff's motion for summary judgment.  An Order consistent with this Opinion will issue this same day.

        SO ORDERED.


_____/s/_____
PAUL L. FRIEDMAN
United States District Judge

DATE: February 12, 2010

---

[6]     Plaintiff submitted an affidavit from an "immigration law expert."  See Cuco Aff.  This affidavit, however, does nothing to support plaintiff's argument.  Although both the G5 contracts and the insurance policies use the term "household," they use this word in two entirely different ways and therefore references to the word do not necessarily mean the same thing in both documents.  Whatever meaning "household" may have had for purposes of the G5 contracts has no relevance to the interpretation of the insurance policies at issue in this case.